728 S.E.2d 45

**Sean Patrick TILLMAN, Respondent,**

v.

**Margaret Jane OAKES, Appellant.**

**No. 4978.**

Court of Appeals of South Carolina.

Heard April 24, 2012.

Decided May 30, 2012.

Rehearing Denied July 19, 2012.

246

David Alan Wilson, Horton, Drawdy, Ward, Mullinax, & Farry, P.A., of Greenville, for Appellant.

John Michael Turner, Sr., Turner & Burney, P.C., of Laurens, for Respondent.

FEW, C.J.

This is an appeal from an order of the family court to change custody of a child. We find the order does not adequately set forth the basis on which it awarded the change and does not demonstrate a substantial change in circumstances affecting the welfare of the child. We reverse and remand for a new trial.

## I. Facts and Procedural History

Margaret Oakes and Sean Tillman married and had two sons: Jack, born in 1993, and Peter, born in 1999. The couple divorced in 2003. The divorce decree incorporated a custody agreement which stated the parents would share joint legal custody of the children with primary placement to Oakes and liberal visitation to Tillman. Almost five years later, in March 2008, Tillman filed this action seeking full custody of the children.[1] In his complaint, Tillman alleged the substantial

---

1. Tillman's complaint states he "believes it is in the best interest of the minor children that he should be awarded full" custody. However, the complaint also states he recognizes that Jack, the older son, is mature and Tillman will respect his parental custodian choice. The family court maintained custody of Jack with Oakes, and his custody is not at issue on appeal.

change in circumstances warranting a custody change was "substantial problems in scheduling visitation and in communication between the parties" and unnamed "other issues." By the time of trial in October 2009, Tillman also asserted a change in circumstances due to two instances of Oakes physically punishing Peter, her alleged lack of cooperation in dealing with "some serious issues" related to Jack, and her alleged attempt to turn the boys against him.

Tillman spent the vast majority of his trial testimony discussing issues regarding Jack's behavior. He explained that these issues relate to Peter, the younger son, because his "biggest concern is that if the situation stays the same that it is today that Peter will end up with some of these same issues that Jack is struggling with." However, except to say Oakes "has refused to cooperate with the father or discuss with him significant issues of concern pertaining to the children," the family court did not address those issues in its order.

The guardian ad litem testified both parents "present great opportunities for these children" and "are good parents." In his written report, the guardian stated, "I believe ... both parents are very capable of providing for their children and, no matter where custody is placed, can meet the needs of the children." He went on to explain the problem with maintaining the original custody arrangement is the parents' communication problems, and the issue "is how to spell out the time specifically in such a manner that there is no doubt about when the children are to be with each parent."

On December 30, 2009, the family court issued an order granting Tillman's request for a change in custody of Peter "commencing with the 2010–2011 school year." The order left custody of Jack with Oakes and provided she would have visitation with Peter every other weekend. While this appeal was pending, Tillman filed a petition in the family court and later this court asking the court to suspend Oakes' visitation with Peter.

## II.  Review of the Family Court's Custody Determination

█  We review decisions of the family court de novo, as the supreme court recently explained in *Lewis v. Lewis*, 392 S.C. 381, 386–89, 709 S.E.2d 650, 652–54 (2011). In *Latimer v.*

*Farmer,* 360 S.C. 375, 602 S.E.2d 32 (2004), the supreme court summarized the legal principles courts apply to a request for a change of custody:

> As in all matters of child custody, a change in custody analysis inevitably asks whether the transfer in custody is in the child's best interests. In order for a court to grant a change in custody, there must be a showing of changed circumstances[,] ... mean[ing] that sufficient facts have been shown to warrant the conclusion that the best interests of the children would be served by the change. The change of circumstances relied on for a change of custody must be such as would substantially affect the interest and welfare of the child. Because the best interest of the child is the overriding concern in all child custody matters, when a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child.

360 S.C. at 381, 602 S.E.2d at 35 (internal citations and quotation marks omitted). *See also Housand v. Housand,* 333 S.C. 397, 405–06 n. 5, 509 S.E.2d 827, 832 n. 5 (Ct.App.1998) ("When determining whether a change of circumstance has been established in a custody case, the issue is whether the evidence, *viewed as a whole,* establishes that the circumstances of the parties have changed enough that the best interests of the children will be served by changing custody."); *Shirley v. Shirley,* 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct.App.2000) ("[T]he change of circumstance relied on for a change of custody must be such as would substantially affect the interest and the welfare of the child, not merely the parties, their wishes or convenience." (internal quotation marks omitted)); *Hollar v. Hollar,* 342 S.C. 463, 476, 536 S.E.2d 883, 890 (Ct.App.2000) ("While Mother clearly suffered a lapse in judgment in allowing [a man] into her bed while the child was in the home, the record is devoid of evidence of any impact on the child whatsoever.... [W]e are not persuaded this isolated incident is sufficient to warrant a change in custody."); *Routh v. Routh,* 328 S.C. 512, 520, 492 S.E.2d 415, 419 (Ct.App.1997) ("[R]emarriage is normally relevant to show improved circumstances on the part of a remarried parent

seeking to obtain custody, not to show the deterioration of the circumstances of the custodial parent.").

█ The family court's order is unclear as to the factual findings which support its conclusion that Tillman proved a substantial change in circumstances that affected Peter's welfare. *See* Rule 26(a), SCFCR ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."). From our review of the order, we discern the following factual findings to support the court's decision:

1. Communications between the parents "diminished to the point that there is no personal mutual acknowledgement or mutual respect between the parents and stepparent to the extent that proper parenting under the joint custody Order is no longer effective."
2. Tillman "remarried and relocated and has a suitable and proper home."
3. Jack is a full-time resident at Governor's School.
4. "[T]he children are now older."
5. "There has been at least one incident of excessive corporal punishment" of Peter by Oakes.
6. "There have been incidents of physical altercations between" Oakes and Peter.
7. The parents "disparaged each other to the children and have improperly exposed the children to their parental difficulties and conflicts."
8. Oakes "refused to cooperate with" Tillman "or discuss with him significant issues of concern pertaining to the children."
9. Oakes and Jack "both have interests in drama and theatre. Peter on the other hand is more into math and science...."
10. "Peter has mainly expressed an interest in being with his father."

These findings, viewed as a whole, do not amount to "a substantial change in circumstances affecting the welfare of the child" or a showing that the "change in custody is in the

overall best interests of the child." *Latimer,* 360 S.C. at 381, 602 S.E.2d at 35.

Several of the findings warrant individual discussion. First, the family court relied on the parents' communication problems. However, the court found the parents mutually responsible for those problems. The court gave no explanation as to how the communication problems affect Peter's welfare and made no finding that a change of custody would improve the problems.

Second, the family court characterized two incidents as "excessive corporal punishment," and found "incidents of physical altercations between" Oakes and Peter. Our review of the testimony reveals that in one incident, Oakes bruised Peter's arm while trying to put a sweatshirt on him before school. Peter had dressed himself in short sleeves when the temperature was thirty degrees outside. When Oakes pressed him to wear the sweatshirt, he "pretty much threw a fit" and refused to wear it, saying to his mother, "No, you can't make me. I'm not gonna wear it." When she attempted to force him to put it on, he started hitting her. In her attempts to restrain him, she bruised his arm. Oakes testified the second incident occurred in the morning after Peter had been particularly defiant since the night before. She described his demeanor as "hateful," "yelling at me," and "objecting when I asked him to do anything at all." She testified he told her "I won't do that," "you can't make me," and "you're mean." At one point he walked away from her when she was trying to talk to him. She testified candidly, "I spun him around by the shoulder and I slapped him." As to the "physical altercations," Oakes testified that they occurred in 2008 when Peter "would get upset" and swing his arms, but he does not do that any longer.

Occasional misbehavior of this type is normal for a child of Peter's age. Though we do not condone Oakes' responses, no parent can be held to the unattainable standard of making a perfect response to the misbehavior of a child every time. Our review of Oakes' testimony convinces us she understands her responses in these situations were unacceptable and is working to ensure she does not respond in that manner in the future. Moreover, the record clearly indicates these were isolated incidents. There is no evidence that any corporal punishment or physical altercations continued to affect Oakes'

relationship with Peter, or Peter's welfare, as of the time of trial. *See Hollar*, 342 S.C. at 476, 536 S.E.2d at 890 (refusing to change custody based on an "isolated incident").

Third, the family court placed some emphasis on Peter's supposed preference to live with Tillman. We find the preference of a ten-year-old on the important issue of a change in custody to be of little value, if any. *See Bolding v. Bolding,* 278 S.C. 129, 130, 293 S.E.2d 699, 700 (1982) (stating "[t]he significance to be attached to the wishes of the child in a custody dispute depends upon the age of the child and the attendant circumstances," and discounting the importance of the preference expressed by an eleven-year-old); *Brown v. Brown,* 362 S.C. 85, 93, 95, 606 S.E.2d 785, 789, 790 (Ct.App. 2004) (stating "[t]he court shall place weight upon the preference based upon the child's age, experience, maturity, [and] judgment," and discounting the importance of the preference expressed by a ten-year-old). Moreover, at other times Peter expressed a preference to live with his mother.

Finally, the order contains several vague references to such things as "some serious issues" and "significant issues of concern." There is no explanation of what those "issues" are, which parent is responsible for their development, or how they affect Peter's welfare. At oral argument, this court addressed its concern that some unwritten factor forms a substantial basis for the family court's decision. The responses from both counsel served only to increase our concern, and we believe the entire basis of the lower court's decision is not reflected in its order. The court's order begins its recitation of changes in circumstances by stating, "there have been a number of material changes in circumstances . . . [which] include but are not limited to. . . ." Rule 26(a) requires that the family court set forth all of the findings of fact that support its decision. By relying on unnamed "serious" issues "of concern" and by failing to set forth all "material" changes in circumstances, the order violates Rule 26(a).

## III. Remand for a New Trial

■ After a thorough review of the entire record and consideration of all the evidence, we conclude the reasons stated by the family court, taken as a whole, do not qualify as

a substantial change in circumstances that affect Peter's welfare. We remand for a de novo custody determination. *See Thomson v. Thomson*, 377 S.C. 613, 623, 661 S.E.2d 130, 135 (Ct.App.2008) ("When an order from the family court fails to make specific findings of fact in support of the court's decision, the appellate court may remand the matter to the family court. . . ."). Two reasons support our decision to remand so that the family court can make the custody determination. First, we believe that some issues not addressed in the order formed a substantial basis for the family court's decision. We find ourselves unable to fully assess the significance of these issues and what effect they might have on Peter's welfare by reviewing the record of the proceedings below.

■ Second, we are troubled by what is alleged to have happened since the family court's order. During the appeal, Tillman filed a petition with the family court, and later with this court, in which he made serious allegations against Oakes regarding her care for Peter during his visitation with her. The petition requests suspension of Oakes' visitation rights. We are unable to determine whether these accusations are true, or are simply the next incident in this father and mother's longstanding pattern of using accusations against each other to further their interests regarding the children and using the children to make their attacks against each other more effective. "In gauging between fit parents as to who would better serve the best interests and welfare of the child in a custodial setting, the family court judge is in a superior position to appellate judges who are left only to review the cold record." *Altman v. Griffith*, 372 S.C. 388, 393, 642 S.E.2d 619, 622 (Ct.App.2007). Recognizing this, we find it necessary for these allegations to be presented to and considered by the family court. *See Dorn v. Criddle*, 306 S.C. 189, 192, 410 S.E.2d 590, 592 (Ct.App.1991) (remanding for a "trial *de novo* " where "more than three years have elapsed since the trial court issued the appealed order"); *Cook v. Cook*, 280 S.C. 91, 93, 311 S.E.2d 90, 91 (Ct.App.1984) (remanding for a "trial de novo" because the court could not determine the child's best interest "due to the considerable amount of time which has elapsed since custody was granted to the mother").

Accordingly, we reverse the family court's determination that Tillman met his burden to prove a substantial change in circumstances that affected Peter's welfare and remand for a new trial. On remand, the family court is to consider all facts and circumstances up to the time of the new trial.

## IV. Matters Not Affected by the Appeal

■ Finally, we address the petition Tillman filed in the family court during the pendency of this appeal asking the court to suspend Oakes' visitation. The family court refused to rule on the petition, stating "this Court is of the opinion that it cannot proceed with this action which involves issues pending on appeal unless the automatic stay is lifted." Denying a subsequent "Motion to Lift Automatic Stay," the family court stated "[t]he better course would be for [the] Father to demonstrate his need for the automatic stay to be lifted before the South Carolina Court of Appeals." [2]

The question of when a lower court may proceed with a case after one of its orders has been appealed can be a difficult one to answer. In this case, the family court erred in finding it could not rule on the petition. As an initial matter, the family court was mistaken in determining that an automatic stay existed as to the appealed order. Rule 241(a), SCACR, provides that "[a]s a general rule, the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order ... and ... the relief ordered." However, Rule 241(b)(6) specifically excludes the order appealed in this case from the general rule, listing "[f]amily court orders regarding a child" as an exception to the automatic stay provision. Under Rule 241(b)(6), therefore, there is no automatic stay in this case. Both parties and the family court recognized this, as the order appealed from took effect according to its terms and custody was changed to Tillman despite the filing of the notice of appeal.

However, the absence of a stay does not mean the family court may proceed with the case while one of its orders is on appeal. When a party appeals an order, two questions may arise as to the effect of the appeal: (1) what is the effect of the

2. On April 23, 2012, Tillman filed a "Petition to Lift Stay" with this court.

appeal on matters decided in the order, particularly the immediate effectiveness of relief ordered; and (2) what is the effect of the appeal on the power of the lower court to proceed with the underlying action while the appeal is pending. The answer to the first question is governed by the stay and supersedeas provisions of Rule 241. If a stay exists, either automatically under Rule 241(a) or by supersedeas under Rule 241(c), the appealed order may not be carried out or enforced during the pendency of the appeal. This is the purpose of a stay under Rule 241—to determine whether the appealed *order* may be carried out or enforced—not to determine whether the *action* may proceed in the lower court while the appeal is pending.

The second question is whether the lower court may proceed with the action during the pendency of the appeal, and its answer is governed by Rule 205, SCACR. The rule provides: "Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal...." Under Rule 205, the lower court is deprived of the power to proceed with matters that are affected by the appeal, but is specifically allowed to proceed with matters not affected by the appeal.[3] The rule states: "Nothing in these Rules shall prohibit the lower court ... from proceeding with matters not affected by the appeal." Rule 205, SCACR; *see also* Rule 241(a), SCACR ("The lower court ... retains jurisdiction over matters not affected by the appeal...."). Thus, the existence or nonexistence of a stay under Rule 241 does not control the family court's power to proceed with the action and address matters not affected by the appeal. Rather, the lower court's power to proceed is determined by whether the issue sought to be litigated in the lower court during the appeal is a "matter[ ] affected by the appeal" under Rules 205 and 241(a). *See Arnal v. Fraser*, 371 S.C. 512, 518–19, 641 S.E.2d 419, 422 (2007) (per curiam) (explaining that Rules 205 and 241(a) permit the family court's action on matters not affected by the

---

**3.** The reference in Rules 205 and 241(a) to the "jurisdiction" of the lower courts does not refer to subject matter jurisdiction. Rather, the rules govern the circumstances under which the exclusive appellate jurisdiction Rule 205 grants to the appellate court deprives the lower court of the power to address a particular issue, or "matter," during the pendency of the appeal.

appeal and prohibit action on matters that are affected by the appeal).[4]

In deciding whether it could hear Tillman's petition, the family court addressed the wrong question—whether the order was stayed during appeal. The question the court should have addressed is whether the issue raised in the petition was a matter affected by the appeal. We find that it was not, and that the family court should have ruled on the petition.

The order on appeal in this case changed custody from Oakes to Tillman and established Oakes' visitation rights. Tillman's petition relates to Oakes' visitation rights. It would appear at first, therefore, that the appeal affected Oakes' visitation rights, and the family court did not retain the power to proceed. However, answering the question of whether a matter is "affected by the appeal" requires a closer examination of the appeal. Oakes challenges only the custody portion of the order in her appeal. In fact, understanding she lost primary custody, Oakes is actually the beneficiary of the visitation provisions in the order. Tillman did not file an appeal. Thus, there is no action the appellate courts could take resolving this appeal that would affect the visitation established in the appealed order, except to reverse the custody determination, in which case Oakes would not need visitation.

Moreover, the petition did not seek relitigation of any factual findings in the order on appeal. The appealed order made a permanent change of custody and established permanent visitation rights based on changes in circumstances occurring before the order. Tillman's petition requested a temporary suspension of Oakes' visitation based exclusively on events occurring after the order.

Under these circumstances, Tillman's petition addressed a "matter[ ] not affected by the appeal." Therefore, the family court retained the power to rule on Tillman's petition.

## V. Conclusion

We remand the custody issue to the family court for a new trial. We understand, however, that the family court cannot

---

4. *Arnal* was decided before Rule 241(a) was renumbered from the former 225(a). *See* Rule 241, SCACR, note.

conduct the retrial until after this court has sent down the remittitur. In the meantime, the family court should promptly hear and decide Tillman's petition to suspend visitation. We request that the family court report its progress on both issues to the Clerk of this court within sixty days, and every thirty days thereafter until a final order is entered.

**REVERSED AND REMANDED.**

HUFF and SHORT, JJ., concur.