**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Ditech Financial, LLC, Respondent,

v.

Kevin G. Snyder, individually and as Personal Representative of the Estate of Mary Snyder, Appellant.

Appellate Case No. 2019-000575

_____

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

_____

Unpublished Opinion No. 2022-UP-308
Heard February 10, 2022 – Filed July 20, 2022

_____

**AFFIRMED**

_____

Jason Scott Luck, of Luck VI Ltd. Co. d/b/a Jason Scott Luck, Attorney at Law, of Bennettsville, for Appellant.

George Benjamin Milam and Jonathan Edward Schulz, both of Bradley Arant Boult Cummings, LLP, of Charlotte, North Carolina; and Michael Casin Griffin, of Waxhaw, North Carolina, all for Respondent.

_____

**PER CURIAM:** In this foreclosure action, Kevin G. Snyder appeals the master-in-equity's (the master's) orders granting Ditech Financial, LLC's (Ditech's)

motion to amend the case caption, denying his motion to compel discovery, and granting partial summary judgment in favor of Ditech; and the master's order and judgment of foreclosure and sale. Snyder argues the master erred in finding Ditech did not violate the South Carolina Supreme Court's Administrative Order on Mortgage Foreclosure Actions[1] (the Administrative Order); denying Snyder's motion to compel discovery when Ditech waived its objections and the materials sought were discoverable under South Carolina law; granting Ditech's motion to amend when Ditech failed to provide Snyder with notice of the motion and the amendment was unsupported by the record; striking Snyder's attorney preference statute[2] defense; and, proceeding with the final foreclosure hearing after Snyder filed his initial notice of appeal. We affirm.

## FACTS AND PROCEDURAL HISTORY

This case arises out of a mortgage foreclosure action brought by Ditech against Snyder. In April 2005, Snyder executed a promissory note (the Note) payable to Gateway Funding Diversified Mortgage Services L.P. (Gateway) for $135,000, at an interest rate of 7.5% per annum. Along with the Note, Snyder executed an "Attorney/Insurance Preference Form." The Note was subsequently endorsed to Countrywide Home Loans, Inc. (Countrywide Inc.) and thereafter, endorsed in blank. To secure the Note, Snyder and his wife, Mary Snyder (collectively, the Snyders), executed a real estate mortgage encumbering real property (the Mortgage).[3] The Note came into default for Snyder's failure to make any payments in September 2008, and all subsequent months.

In April 2010, BAC Home Loans Servicing, LP (BAC)[4] sent Snyder a notice of intent to accelerate. Thereafter, in September 2010, BAC filed a foreclosure action against Snyder, alleging the Note and Mortgage came into default in September 2008.[5] In December 2012, BAC filed and served upon Snyder a notice of

---

[1] *In re Mortg. Foreclosure Actions*, 396 S.C. 209, 720 S.E.2d 909 (2011).

[2] S.C. Code Ann. § 37-10-102 (2015) (Attorney Preference Statute).

[3] Between 2007 and 2013, the Mortgage was transferred: in September 2007, Gateway assigned it to Countrywide Inc.; in January 2009, Countrywide Inc. attempted to assign it to Countrywide Home Loans Servicing, LP (Countrywide Servicing); and in June 2013, Countrywide Inc. assigned it to Green Tree Servicing LLC (Green Tree).

[4] Countrywide Servicing became BAC by virtue of a name change.

[5] BAC amended its complaint in October 2010, to include Mary as a defendant. Mary passed away in November 2015, and the parties consented to substituting

foreclosure intervention pursuant to the Administrative Order. Because Snyder failed to submit the documents BAC required to consider loan modification, BAC filed and served upon Snyder a notice of denial of loan modification or other means of loss mitigation in April 2013.

In May 2013, Snyder's counsel filed and served a notice of appearance directing that all correspondence concerning the foreclosure matter be served at an address in Charleston, South Carolina. Snyder's counsel gave additional notice of two address changes in March 2015 and December 2016.

On June 3, 2013, Snyder filed an answer and counterclaims, asserting several defenses against BAC, including violation of the Administrative Order, violation of the Attorney Preference Statute as to Mary, and claiming BAC lacked standing to bring the foreclosure action. Snyder alleged he was entitled to setoff or recoupment for violation of the Attorney Preference Statute. Snyder asserted several counterclaims, including civil compensatory contempt for failure to comply with the Administrative Order and quiet title, seeking dismissal of the complaint based on civil compensatory contempt and quiet title. Additionally, Snyder alleged BAC engaged in unconscionable conduct that was "both described in [the pleadings] and to be determined after a reasonable period of discovery," and he asserted this barred BAC's claims.

In June 2013, Green Tree notified Snyder that it had assumed the servicing of the Mortgage and the total amount due and owing on the Note was $204,798.56. Thereafter, Snyder's counsel contacted Green Tree to inquire about Snyder's options for foreclosure modification or intervention. In August 2013, Green Tree's counsel provided Snyder's counsel with a loss mitigation package and gave Snyder thirty days to provide required forms and documents. In October 2013, the master issued an order staying the proceeding pending foreclosure intervention.

In December 2014, Green Tree approved a trial modification plan for Snyder, which he rejected in March 2015. Foreclosure intervention efforts on the part of Snyder, Green Tree, and Ditech[6] continued through June 2017, when Ditech ultimately determined Snyder was ineligible for loan modification.

In response to Snyder's second set of interrogatories and requests to produce, Green Tree argued, inter alia, the requests were overbroad and irrelevant. In

Snyder, individually and as personal representative of the Estate of Mary Snyder, as defendant in December 2018.

[6] Green Tree and Ditech merged in August 2015, and became known as Ditech.

November 2018, Snyder filed a motion to compel discovery, arguing the materials requested were relevant; obtaining them would not burden Green Tree; and, the requested attorney's fee agreement was not privileged. Snyder sought several documents in connection with a Federal Trade Commission (FTC) action filed against Green Tree in the United States District Court of the District of Minnesota. Specifically, he requested accounting records "showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss"; personnel records for four specific Green Tree employees, all employees who interacted with the Snyders and their attorneys, and those employees who reviewed the Snyders' loss mitigation applications; and, copies of all scripts and training materials related to Green Tree's collection of debts. The employee records Snyder sought included employees' addresses, telephone numbers, job titles, dates of service, and reasons for termination. After hearing the motion, the master summarily denied the Snyders' motion to compel by order dated March 18, 2019.

In February 2019, Ditech filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. On March 1, 2019, Ditech filed a notice of bankruptcy filing and imposition of automatic stay and amended its filing in May 2019. The bankruptcy court issued an order granting limited relief from the automatic stay to permit actions "for the sole purpose of defending, unwinding, or otherwise enjoining or precluding any foreclosure . . . and [those that] do not have an adverse effect on any of Ditech's assets." The order specifically provided that claims against Ditech seeking monetary relief of any kind were stayed.

On March 11, 2019, Ditech moved for summary judgment in the foreclosure action. As to Snyder's counterclaim for quiet title, Ditech argued that, to the extent Snyder alleged the Mortgage was invalid because Mary did not sign an attorney preference form, the claim failed because Mary was not a "borrower" under section 37-10-102. As to Snyder's claim for civil compensatory contempt, Ditech argued that it complied with the Administrative Order; compliance with the order was a condition precedent to a foreclosure action; and, the Administrative Order did not create a private right of action or form the basis of a counterclaim.

Snyder moved for partial summary judgment as to his claims for civil compensatory contempt and quiet title. He argued Ditech failed to act in good faith in violation of the Administrative Order and requested the master strike Ditech's amended complaint and reply to Snyder's counterclaims. Additionally, Snyder sought relief either by dissolution of Ditech's lien or rescission of the Note and Mortgage. In the alternative, Snyder requested the master strike Ditech's

demand for damages and deficiency judgment due to the unnecessary delay in proceedings resulting from Ditech's consideration of Snyder's loan modification application.

The master heard the motions for summary judgment on March 18, 2019. In its March 27, 2019 order, the master found Snyder's counterclaim for quiet title was not stayed by the bankruptcy filing but his counterclaim for civil compensatory contempt was stayed to the extent it sought a monetary award. The master further found Ditech acted in good faith and complied with the Administrative Order and granted partial summary judgment in favor of Ditech as to the non-stayed portions of Snyder's claim for civil compensatory contempt. Finally, the master struck Snyder's Attorney Preference Statute defense as to Mary, concluding she was not a borrower within the meaning of section 37-10-102. The master scheduled the trial of Ditech's foreclosure claim and Snyder's quiet title claim for April 1, 2019.

Snyder filed a notice of appeal with this court on April 1, 2019, appealing the master's March 12, 2014 order amending the caption, March 18, 2019 order denying Snyder's motion to compel, and March 27, 2019 summary judgment order.

At the foreclosure hearing, Ditech conceded it would be improper for the master to schedule a foreclosure sale before this court determined whether Snyder's appeal could proceed. Ditech emphasized it was only asking the master to decide all of the factual and legal issues that were not determined at the summary judgment stage so that all of the issues could be raised together on appeal.

The master issued an order and judgment of foreclosure and sale on April 26, 2019. The master determined he had the authority to proceed with the foreclosure action because it was not stayed by Snyder's initial notice of appeal. He found his March 12, 18, and 27 orders were interlocutory and therefore Snyder's premature appeal did not stay the foreclosure proceedings. Alternatively, the master determined he retained jurisdiction over matters not affected by the appeal pursuant to Rules 205 and 241, SCACR. The master found the Note was in default as a result of Snyder's failure to make any monthly payments due for September 1, 2008, and all subsequent months. He determined the amount due and owing on the Note totaled $293,930.69, which included $137,020.25 in principal; $109,616.64 in accrued interest; $39,816.39 in escrow advances; and, $6,626.25 in attorney's fees. Ditech waived its right to a deficiency judgment. The master concluded Snyder failed to establish he was entitled to the remedy of quiet title because Ditech possessed the Note endorsed in blank. The master reiterated Ditech met the requirements of the Administrative Order and Snyder failed to establish any claims or defenses—legal or equitable—for relief against Ditech.

On May 2, 2019, Snyder filed a motion for supersedeas with the master, seeking to "suspend any and all activity" in the foreclosure action, particularly the sale of the real property. The master granted the supersedeas motion and set the bond at $25,000. Snyder then filed an amended notice of appeal with this court, appealing the master's April 23, 2019 order and judgment of foreclosure and sale. Subsequently, Snyder filed a petition for a writ of supersedeas to waive the bond or set it at a nominal amount, which this court denied. On November 10, 2021, the master issued an order of sale and disbursement for $247,104.

## STANDARD OF REVIEW

"A mortgage foreclosure is an action in equity." *U.S. Bank Tr. Nat'l Ass'n v. Bell*, 385 S.C. 364, 373, 684 S.E.2d 199, 204 (Ct. App. 2009) (quoting *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997)). "The appellate court's standard of review in equitable matters is our own view of the preponderance of the evidence." *Horry County v. Ray*, 382 S.C. 76, 80, 674 S.E.2d 519, 522 (Ct. App. 2009). "A legal question in an equity case receives review as in law." *Sloan v. Greenville County*, 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct. App. 2003). "Because questions of law may be decided with no particular deference to the [master-in-equity], this court may correct errors of law in both legal and equitable actions." *Bell*, 385 S.C. at 373, 684 S.E.2d at 204.

## ISSUES ON APPEAL

1. Did the master err in finding Ditech did not violate the Administrative Order when Ditech's and its predecessor's misconduct delayed the foreclosure proceedings?

2. Did the master abuse his discretion in denying Snyder's motion to compel discovery when Ditech waived its objections and the materials sought were discoverable under South Carolina law?

3. Did the master abuse his discretion in granting Ditech's March 20, 2014 motion to amend when Ditech failed to provide Snyder notice of its motion and the motion was unsupported by the record?

4. Did the master err in striking Snyder's Attorney Preference Statute defense?

5. Did the master abuse his discretion in proceeding with the final foreclosure hearing after Snyder filed his initial notice of appeal?

## LAW AND ANALYSIS

### I.      The Administrative Order

Snyder argues the record contained a scintilla of evidence showing Ditech and its predecessors violated the Administrative Order by failing to act in good faith during the foreclosure intervention process.  We disagree.

"When reviewing an order granting summary judgment, the appellate court applies the same standard as the trial court." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006).  "Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *Id.*; *see also* Rule 56(c), SCRCP.  "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *David*, 367 S.C. at 247, 625 S.E.2d at 3.  "Under Rule 56(c), the party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991).  "Once [the] moving party carries its initial burden, [the] opposing party must, under Rule 56(e),[ SCRCP,] 'do more than simply show that there is some metaphysical doubt as to the material facts' but 'must come forward with "specific facts showing that there is a *genuine issue for trial*."'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Administrative Order states in pertinent part:

> In all mortgage foreclosure actions . . . before any merits hearing in the case, or if an order of foreclosure has been entered, before any foreclosure sale, the Mortgagee shall, through its attorney of record, file with the court and serve upon every Mortgagor a notice of the Mortgagor's right to foreclosure intervention.  All proceedings in the foreclosure action shall be stayed until completion of such foreclosure intervention.
>
> No foreclosure hearing or foreclosure sale may be held in the foreclosure action until the Mortgagee's attorney certifies the following:

(a) that the Mortgagor has been served with a notice of the Mortgagor's right to foreclosure intervention for the purpose of seeking a resolution of the foreclosure action by loan modification or other means of loss mitigation;

(b) that the Mortgagee, or its designated agent, has received and examined all documents and records required to be submitted by the Mortgagor to evaluate eligibility for foreclosure intervention;

(c) that the Mortgagor has been afforded a full and fair opportunity to submit any other information or data pertaining to the Mortgagor's loan or personal circumstances for consideration by the Mortgagee;

(d) that after completion of the foreclosure intervention process, the Mortgagor does not qualify for loan modification or other means of loss mitigation, in accordance with any standards, rules or guidelines applicable to the mortgage loan, and the parties have been unable to reach any other agreement concerning the foreclosure process; and,

(e) that notice of the denial of loan modification or other means of loss mitigation has been served on the Mortgagor by mailing such notice to all known addresses of the Mortgagor; provided, that such notice shall also state that the Mortgagor has 30 days from the date of mailing of notice of denial of relief to file and serve an answer or other response to the Mortgagee's summons and complaint.

If within thirty days after having been served with notice of the Mortgagor's rights, the Mortgagor has failed, refused, or voluntarily elected not to participate in any foreclosure intervention process, the Mortgagee, through its attorney, shall certify that fact to the Court, and the foreclosure action may proceed.

*In re Mortg. Foreclosure Actions*, 396 S.C. at 211-12, 720 S.E.2d at 909. The Administrative Order further provides that in all mortgage foreclosure actions:

> Throughout the foreclosure intervention process and the foreclosure action, the Mortgagee shall communicate with and otherwise deal with the Mortgagor through the Mortgagee's attorney, and the Mortgagor shall have the right to deal with the Mortgagee through the Mortgagee's attorney. This includes, without limitation, submission of all required information, negotiations, and consummation of any loan modification or other loss mitigation agreement. If the Mortgagor is represented by an attorney, then the Mortgagee shall communicate with and otherwise deal with the Mortgagor through the Mortgagor's attorney.
>
> . . . .
>
> The Court having jurisdiction over the foreclosure action shall hear and determine any dispute concerning any party's compliance with this order, including without limitation, the failure of any party to act in good faith in complying with the terms of this order. In the event the Court determines that any party to the foreclosure action, or their acting agent, has failed to comply with the terms of this order, or has not attempted to reach an agreement for foreclosure intervention in good faith, *the Court may, in its discretion, impose such sanctions as it determines to be reasonable and just under the circumstances*, including without limitation, the assessment of reasonable attorneys' fees and costs against the culpable party.

*Id.* at 213-14, 720 S.E.2d 908, 909-10 (emphasis added).

We hold the master did not err in granting summary judgment as to this issue. Viewing the facts in the light most favorable to Snyder, we conclude there was no genuine issue as to any material fact concerning whether Ditech complied with the Administrative Order. Snyder supplied no evidence to show Ditech or its predecessors failed to comply with the Administrative Order. Rather, the record shows BAC filed and served upon the Snyders a notice of foreclosure intervention

and when the Snyders failed to respond to the notice, BAC filed and served the Snyders with a notice of denial of loan modification. These actions complied with the Administrative Order. *See id.* at 211-12, 720 S.E.2d at 909. Subsequently, Snyder's counsel contacted Green Tree in June 2013, inquiring about the Snyders' options for foreclosure modification or intervention. The foreclosure intervention process continued for four years, even after Snyder rejected Ditech's modification terms in March 2015. We acknowledge evidence showed Ditech and its predecessors sent correspondence to the wrong address on five occasions during this period and directly contacted Snyder on one occasion after being notified he was represented by counsel. However, considering Snyder's counsel's three changes of address, Green Tree's merger with Ditech, and the significant amount of correspondence exchanged between the parties during this period, we find the evidence does not demonstrate Ditech's actions constituted a failure to act in good faith during the foreclosure intervention process. In addition, we find Snyder failed to demonstrate how Ditech's improper affidavit of default, which the master subsequently lifted, and alleged spoliation of evidence show Ditech and its predecessors violated the Administrative Order.

Furthermore, the delay in the foreclosure proceeding—which resulted in substantial interest and fees—was at least in part a result of Snyder's own conduct. Snyder, through his counsel, continued to pursue foreclosure intervention of his own volition for four years, during which time Ditech paid all taxes and insurance premiums on the mortgaged property. For the foregoing reasons, we affirm the master's order granting summary judgment in favor of Ditech as to Snyder's non-stayed counterclaim for civil compensatory contempt.[7]

## II.     Motion to Compel Discovery

Snyder argues the master abused his discretion in denying Snyder's motion to compel discovery because he was entitled to the records Green Tree retained in connection with its settlement with the FTC and Ditech's responses to his second set of interrogatories were impermissibly generic and therefore waived. We disagree.

---

[7] Because our decision that no genuine issue of material fact existed as to Snyder's allegation Ditech violated the Administrative Order is dispositive of this issue, we decline to reach the question of whether the Administrative Order created a private cause of action. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

We find the master did not abuse his discretion in denying Snyder's motion to compel because evidence shows the materials Snyder sought were irrelevant and overly broad. *See Bayle v. S.C. Dep't of Transp.*, 344 S.C. 115, 128, 542 S.E.2d 736, 742 (Ct. App. 2001) ("The rulings of a trial judge in matters involving discovery will not be disturbed on appeal absent a clear showing of an abuse of discretion."); *id.* ("An abuse of discretion occurs when the trial judge's ruling is based upon an error of law or, when based on factual conclusions, is without evidentiary support."); *Dunn v. Dunn*, 298 S.C. 499, 502, 381 S.E.2d 734, 735 (1989) ("The burden is upon the party appealing from the order to demonstrate the trial court abused its discretion."); *see also* Rule 26(b)(1), SCRCP ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ."). First, the scope of the accounting records Snyder sought encompassed all of Green Tree's business—not just Snyder's account—and therefore covered an overly-broad amount of information. Further, Snyder failed to show how information pertaining to all of Green Tree's accounts, personal employee information, or general training materials would have been relevant to this case. To support his defenses and counterclaims, Snyder had the burden of demonstrating Ditech engaged in certain acts or omissions in its dealings with Snyder. Conduct Ditech may have engaged in with non-parties was irrelevant to its dealings with Snyder. Finally, as to Ditech's attorney's fee agreements, the information concerning Ditech's attorney's fees would be—and in fact was—provided to the master to determine the appropriate award. Because evidence supports the master's denial of Snyder's motion to compel, we affirm as to this issue.

As to Snyder's argument Ditech waived its objections to the second set of interrogatories, we find this issue is not preserved for appellate review because it was neither raised to nor ruled upon by the master. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [master] to be preserved for appellate review."). Snyder did not include this argument in his motion to compel and, by his own admission, the hearing on the motion to compel was not transcribed by a court reporter. Thus, we find this issue is not preserved.

## III.    Motion to Amend

As to Snyder's argument the master abused his discretion by granting Green Tree's February 19, 2014 motion to amend the case caption, we find this issue is moot.

*See Cheap-O's Truck Stop, Inc. v. Cloyd*, 350 S.C. 596, 602, 567 S.E.2d 514, 517 (Ct. App. 2002) ("An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." (quoting *Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001))); *see also Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006) ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court."). On March 12, 2014, the master issued an order amending the caption to name Green Tree as the proper plaintiff. The order provided the action was originally brought in the name of BAC in anticipation of an assignment of the mortgage to that entity but stated no such assignment was recorded, and by virtue of an assignment from Countrywide Inc. to Green Tree, Green Tree was the proper plaintiff. Because Snyder subsequently agreed by consent order to Ditech's 2018 motion to amend the caption to substitute Ditech for Green Tree as plaintiff, we find this issue is moot.

## IV.      Attorney Preference Statute Defense

Snyder argues the master erred by concluding Mary was not a "borrower" under section 37-10-102(a)[8] and, accordingly, struck his Attorney Preference Statute defense. Snyder asserts this prejudiced Mary's estate because the defense would have acted as a setoff to Ditech's foreclosure judgment. We find this issue is moot.

Subsequent to the master striking Snyder's Attorney Preference Statute defense, Ditech waived its right to a deficiency judgment. In his brief of appellant, Snyder argues his assertion of a defense for violation of the Attorney Preference Statute would have served as a *setoff* to Ditech's judgment. *See* S.C. Code Ann. § 37-10-105(A) (2015) ("If a creditor violates a provision of this chapter, the debtor has a cause of action . . . to recover actual damages and also a right in an action . . . to recover from the person violating this chapter a penalty in an amount determined by the court of not less than one thousand five hundred dollars and not more than seven thousand five hundred dollars. . . . This subsection does not bar a

---

[8] S.C. Code Ann §-37-10-102(a) ("Whenever the primary purpose of a loan that is secured in whole or in part by a lien on real estate is for a personal, family or household purpose . . . . The creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction and . . . the insurance agent to furnish required hazard and flood property insurance in connection with the mortgage and comply with such preference.").

debtor from asserting a violation of this chapter in an action to collect a debt which was brought more than three years from the date of the occurrence of the violation *as a matter of defense by recoupment or set-off in such action*." (emphasis added)). However, he failed to assert any actual damages he or Mary's estate suffered as a result of the alleged violation to the master.[9] Snyder was required to provide a factual basis for his claim *and* any actual damages suffered as a result of the alleged violation. *See Baughman*, 306 S.C. at 115, 410 S.E.2d at 545 ("Once [the] moving party carries its initial burden, [the] opposing party must, under Rule 56(e),[ SCRCP,] 'do more than simply show that there is some metaphysical doubt as to the material facts' but 'must come forward with "specific facts showing that there is a *genuine issue for trial*."'" (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587)). Accordingly, we find Snyder failed to preserve the issue of whether he or Mary's estate was entitled to actual damages. *See Staubes*, 339 S.C. at 412, 529 S.E.2d at 546 ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [master] to be preserved for appellate review."). Thus, any penalty amount Snyder may have recovered as a setoff was precluded by Ditech's deficiency waiver. *See Setoff*, *Black's Law Dictionary* (11th ed. 2019) ("A debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor."). Therefore, we find the question of whether Mary was a borrower under section 37-10-102(a) is moot. *See Cheap-O's Truck Stop, Inc.*, 350 S.C. at 602, 567 S.E.2d at 517 ("An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." (quoting *Curtis*, 345 S.C. at 567, 549 S.E.2d at 596)); *Sloan*, 369 S.C. at 26, 630 S.E.2d at 477 ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court.").

---

[9] As to Snyder's assertion during oral argument that Ditech's alleged violation of the Attorney Preference Statute should preclude Mary's estate from being subject to her half-portion of the lien, we find this issue is not properly before this court. *See Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989) (noting an appellant may not use oral argument as a vehicle to argue issues not argued in the appellant's brief).

## V. Jurisdiction to Proceed with Final Foreclosure Hearing

Snyder argues the master lacked jurisdiction to proceed with the foreclosure action after Snyder filed his initial notice of appeal.  Although we find the master erred in proceeding with the foreclosure, we affirm.

In reviewing a master's decision to retain jurisdiction over matters not affected by an appeal, an appellate court applies an abuse of discretion standard.  *See Cousar v. New London Eng'g Co.*, 306 S.C. 37, 40, 410 S.E.2d 243, 245 (1991).

> Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal; the lower court or administrative tribunal shall have jurisdiction to entertain petitions for writs of supersedeas as provided by Rule 241.  Nothing in these Rules shall prohibit the lower court, commission or tribunal from proceeding with matters not affected by the appeal.

Rule 205, SCACR.

> As a general rule, the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order, judgment, decree or decision on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree or decision.  This automatic stay continues in effect for the duration of the appeal unless lifted by order of the lower court, the administrative tribunal, appellate court, or judge or justice of the appellate court.  The lower court or administrative tribunal retains jurisdiction over matters not affected by the appeal including the authority to enforce any matters not stayed by the appeal.

Rule 241(a), SCACR.

> The reference in Rules 205 and 241(a) to the "jurisdiction" of the lower courts does not refer to subject matter jurisdiction.  Rather, the rules govern the circumstances under which the exclusive appellate jurisdiction Rule 205 grants to the appellate court deprives the lower court of the power to address a

> particular issue, or "matter," during the pendency of the
> appeal.

*Tillman v. Oakes*, 398 S.C. 245, 256 n.3, 728 S.E.2d 45, 51 n.3 (Ct. App. 2012).

We find the master erred in ordering the judgment of foreclosure and sale when Ditech conceded at the foreclosure hearing that it would be improper for the master to schedule a foreclosure sale while Snyder's initial appeal was pending with this court. Although the master based his decision in part on whether Snyder's appeal was premature, the correct inquiry should have been whether Snyder's appeal affected the order and judgement of foreclosure and sale. *See Tillman*, 398 S.C. at 254-55, 728 S.E.2d at 50 ("When a party appeals an order, two questions may arise as to the effect of the appeal: (1) what is the effect of the appeal on matters decided in the order, particularly the immediate effectiveness of relief ordered; and (2) what is the effect of the appeal on the power of the lower court to proceed with the underlying action while the appeal is pending."). Snyder's initial appeal challenged the March 12, 2014 order amending the caption, March 18, 2019 order denying Snyder's motion to compel, and March 27, 2019 order granting partial summary judgment. In his order granting partial summary judgment, the master found in favor of Ditech as to Snyder's counterclaim for civil compensatory contempt to the extent Snyder sought a complete bar to foreclosure. Moreover, the master determined Ditech had complied with the Administrative Order, which allowed the master to proceed and adjudicate the foreclosure dispute. *See In re Mortg. Foreclosure Actions*, 396 S.C. at 211-12, 720 S.E.2d at 909. These matters affected the master's order and judgment of foreclosure and sale because, if reversed on appeal, they could have prevented the master from ordering foreclosure. *See* Rule 205, SCACR ("Nothing in these Rules shall prohibit the lower court, commission or tribunal from proceeding with matters not affected by the appeal."); Rule 241, SCACR ("The lower court or administrative tribunal retains jurisdiction over matters not affected by the appeal including the authority to enforce any matters not stayed by the appeal."). Accordingly, we conclude the master erred in ordering the judgment of foreclosure and sale while Snyder's appeal was pending.

Nevertheless, because Snyder filed an amended notice of appeal to include the master's order and judgment of foreclosure and sale, this error does not warrant reversal of the foreclosure judgment and sale. As we stated, we affirm the master's order granting partial summary judgment in favor of Ditech as to Snyder's non-stayed counterclaim for civil compensatory contempt. Our decisions as to

these issues are dispositive as to this issue, and we therefore conclude reversal is not warranted notwithstanding this error.

**CONCLUSION**

For the foregoing reasons, we affirm the master's denial of Snyder's motion to compel discovery, grant of partial summary judgment in favor of Ditech as to the non-stayed portions of Snyder's claim for civil compensatory contempt, and order and judgment of foreclosure and sale, and we find Snyder's appeal of the master's decision to strike his Attorney Preference Statute defense and Ditech's motion to amend the case caption are moot.

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**